434

## FOLEY v. ALLEN, Collector of Internal Revenue.

### No. 12365.

United States Court of Appeals Fifth Circuit.

Nov. 12, 1948.

Louis Regenstein, Jr., of Atlanta, Ga., and William C. Turpin, Jr., John B. Harris, and Charles J. Bloch, all of Macon, Ga., for appellant.

Melva M. Graney and Lee A. Jackson, Sp. Assts. to Atty. Gen., Theron Lamar Caudle, Asst. Atty. Gen., and John P. Cowart, U. S. Atty., of Macon, Ga., for appellee.

Before HUTCHESON, McCORD and WALLER, Circuit Judges.

WALLER, Circuit Judge.

Mrs. Adele L. Foley, the generous mother of Frank, Charles, and Joseph Foley, in 1934 was the owner of 800 shares of common stock in the Coca-Cola Company of Atlanta, and undertook to give to Charles and Frank each 300 shares of that stock. Charles Foley for a long time theretofore had managed his mother's affairs to the same extent, and apparently with the same authority, as if her affairs had been his own. As a matter of convenience, and with his mother's consent, he procured many of her securities to be issued in his name, including 400 shares of the stock in question, and whenever it was necessary to borrow money for her, he did so in his own name, using as collateral the stock of his mother so issued. Of the 800 shares of Coca-Cola stock, 200 were in the name of his mother, 500 in Charles' name, and 100 in the name of Frank Foley on the books of the Coca-Cola Company. All of this stock, in actuality, belonged to Mrs. Foley, 400 shares of which had been pledged to the First National Bank of Atlanta to secure a loan to her of $32,500 which Charles had made in his own name but on her behalf.

On October 18, 1934, Charles Foley went to his brother Frank's office and advised him that their mother was making to each of them a gift of 300 shares of the Coca-Cola stock and that he was then on his way to the office of Henry Trost, a public accountant, to get him to arrange the

details of the gift. Frank immediately went to his mother's home and thanked her for the gift. The accountant advised Mrs. Foley to make two gifts instead of one, that is, to make one in 1934 and the second in 1935. Mrs. Foley declined to follow this advice, stating that she desired that each of her sons should have the stock immediately in order that they might enjoy it while they were young. She thereupon instructed Charles to take care of the details and go ahead with the gift. At one conference between Charles, Frank, and their mother, Frank agreed that 100 shares of his stock might remain as part of the collateral securing the indebtedness of Mrs. Foley to the First National Bank, even though it was a fact, and understood at that time by all three, that Mrs. Foley had other assets more than ample to take care of the indebtedness to the bank.

As heretofore stated, 100 shares of the stock had been in the name of Frank Foley prior to, and at the time of, the gift, and it was agreed between him and Charles that in 1934 he would receive 50 of that 100 shares standing in his name and 100 of the shares pledged to the bank,[1] and in the succeeding year he would be given the other 50 shares of the 100 standing in his name, plus 100 additional shares of that pledged to the bank.

The 300 shares given by Mrs. Foley to Charles are not involved in this suit, nor are the 100 shares of stock that stood in Frank's name before the gift. The Government does not contest the validity of the gifts of those 400 shares. Involved in the suit, therefore, are only the other 200 shares given, or attempted to be given, as the case may be, to Frank, which were, by a stock dividend of 600 shares, or 300%, in 1935 increased to 800 shares.

The Commissioner insists that there was no actual delivery of these 200 shares to Frank and no relinquishment of dominion and control over them by the mother; that these 200 shares, therefore, remained part of the estate of Mrs. Adele Foley, who died May 24, 1941; and that in consequence of the failure to complete the gift, Frank Foley, as administrator of the estate of Mrs. Foley, owed the Government an estate tax thereon.

Charles died in 1939 and Frank was appointed administrator of his estate. He was also appointed administrator of the estate of his mother upon her death 2 years later.

At the time of the death of Charles Foley, the 200 shares—which by virtue of the stock dividend had grown to 800—were still in the name of Charles Foley on the books of the corporation and still pledged to the bank as security for the indebtedness of Mrs. Foley. In order to settle the estate of Charles Foley, and in order to clarify the ownership of the various securities, after his appointment as administrator, Frank had the 800 shares here in controversy transferred to his name. A new note was given to the bank, signed by the mother, endorsed by Frank, and secured in part by the stock in question. Upon the death of Mrs. Foley in 1941 Frank Foley assumed one-half of his mother's indebtedness and his brother, Joseph, assumed the other half, and thus the bank was paid. The indebtedness in the meantime had increased to the sum of $59,729.08 and this amount was deducted from the gross estate of Mrs. Foley.

Appellant, as administrator of his mother's estate, paid the estate tax demanded and sued Appellee, as Collector of Internal Revenue of Georgia, for a refund of the taxes so paid. The trial was before a jury, which returned a verdict in favor of plaintiff, but the lower Court, after such verdict, sustained a motion for a judgment non obstante veredicto and entered a judgment for the defendant on the theory that the gift had not been completed in that there had not been the requisite delivery or

---

[1] Testimony of Frank Foley (R. 30):
"Well, because it wasn't convenient to do it that way. Charlie told me he wanted that stock to stay up there because he wanted my mother's other stock available for some stock transaction that he was engaging in for her. He said if I insisted on it, he would arrange it and withdraw it, but I saw no objection to leaving it there. Her assets were ample to take care of it, in addition to the loan she had at the bank and I left it up there as a matter of convenience for Charlie in handling her affairs."

relinquishment of dominion and control by the donor.

The statutes of Georgia define the essentials of a valid gift inter vivos in line with the general law elsewhere and provide that:

"To constitute a valid gift, there shall be the intention to give by the donor, acceptance by the donee, and delivery of the article given or some act accepted by the law in lieu thereof." Sec. 48-101, Georgia Code.

"Actual manual delivery shall not be essential to the validity of a gift. Any act which shall indicate a renunciation of dominion by the donor, and the transfer of dominion to the donee, shall be a constructive delivery." Sec. 48-103, Georgia Code.

There are a number of circumstances in evidence bearing upon the question as to whether or not there was a delivery of such actuality as to constitute a valid gift, or, if not, whether there was such a renunciation of dominion and control by the mother to her son as would amount to constructive delivery as contemplated by the foregoing statute.

The evidence shows beyond dispute that Mrs. Foley intended, and attempted, to make the gift, and that the donee intended to, and did, accept the same, but the Commissioner contends that there was no written assignment and no handing over of the certificates of stock by Mrs. Foley, and that since the stock remained pledged to secure her indebtedness at the bank, there was no renunciation of dominion by the donor. This stance of the case requires that we examine the evidence in order to ascertain whether or not there was either an actual or constructive delivery of the stock.

The following facts and circumstances in evidence seem to support Appellant's contention that there was at least a valid constructive delivery:

1. Mrs. Foley made gift tax returns wherein she made sworn statements that she had given stock to her sons.

2. Mrs. Foley received no dividends but the dividends were paid to the donees after the date of the alleged gift.

3. These dividends were not included in Mrs. Foley's income tax returns but were included in the returns of the donees.

4. The stocks were omitted from the intangible tax returns filed by the donee under oath with the authorities of the State of Georgia.

5. The state intangible tax on these stocks was paid by the donees and not by the donor.

6. Mrs. Foley, Frank Foley, Joe Foley, and Henry Trost, the accountant—all of whom are now dead except Frank—, each filed an affidavit with the Coca-Cola Company on December 29, 1939, averring the gift of stock from Mrs. Foley, and each signed an agreement to hold the Coca-Cola Company harmless in consideration of the transfer of said stock on the books of the Company to Frank Foley.

7. The transfer, during the lifetime of Mrs. Adele Foley, on the books of the Coca-Cola Company, of the stock to Frank Foley, pursuant to the affidavits mentioned in No. 6 above.

8. The filing of an estate tax return in the estate of Charles Foley showing a like gift from Adele Foley to him.

9. The building of a home by Frank Foley in 1937 and the borrowing from the bank of $25,000.00 on the strength of the stock in question.

The following events and circumstances seem to indicate the exercise of dominion and the enjoyment of the benefits of said stock by Frank Foley:

1. The receipt of all dividends from the stock.

2. The returning of all dividends from the stock in income tax returns by Frank Foley.

3. The execution of donee gift tax returns by Frank Foley.

4. The making of intangible tax returns and paying the tax.

5. Execution of agreement by Frank Foley to Coca-Cola Company to hold it harmless for making the transfer on its books of the stock to him.

6. Failure to include and distribute the stock as a part of the estate of Adele Foley after her death.

7. The relinquishment by Joe Foley, one of the two heirs of Adele Foley, of any claim to a one-half interest in the stock as heir of Adele Foley.

We are aware of no rule or principle that prevents the donor from making a valid gift of personal property that is subject to a lien or that theretofore had been pledged to secure an indebtedness. Where such a gift is made, the donor, upon the discharge of the indebtedness and the release of the security by the pledgee, would have no right to recapture it or to rescind the gift; and the pledgor, under appropriate instructions from the donor or pledgee to deliver the property pledged to the donee upon discharge of the indebtedness, would, prior to delivery, be a trustee of such property for the use and benefit of the donor.[2] Moreover, a delivery to a third person with irrevocable instructions to deliver same to the donee upon payment of the indebtedness would not render the gift imperfect because of the donor's failure to make delivery to the donee in praesenti. The fact, also, that the donee, without being required to do so as a condition of the gift, consents for the subject of the gift to remain pledged for the use and benefit of the donor until the debt is paid is not, in our judgment, repugnant to a valid gift nor would such consent constitute a retention of dominion and control by the donor over the property donated.

The case was tried by a jury. One of the material tests of a valid gift inter vivos is the intent of the donor to make a gift and the intent of the donee to accept it. Matters of intent are questions of fact pre-eminently for the jury. Likewise the question as to whether the facts and circumstances would, or would not, justify the inference that the dominion had been renounced and relinquished by Adele Foley and acquired and exercised by Frank Foley, was for the jury. We also think that the facts and circumstances were sufficient to support the jury's verdict and, to say the least, the requisite intent, coupled with a constructive delivery, was shown by the evidence to have been made. Moreover, we think the facts and circumstances

constitute sufficiently substantial evidence of an actual delivery by Mrs. Foley when she joined in procuring the Coca-Cola Company to transfer the stock on the books of the Company to have warranted the submission of this phase of the case to the jury. The granting of the motion for a verdict non obstante veredicto was error and the cause is remanded with directions to reinstate the jury verdict and to enter judgment for the plaintiff.

Reversed with directions.