**MICHAEL PULU, Plaintiff,**

**v.**

**PULU F. TALALOTU and WINNIE SU`APAIA, Defendants.**

High Court of American Samoa
Land and Titles Division

LT No. 27-02

October 20, 2003

Before RICHMOND, Associate Justice, SAGAPOLUTELE, Associate Judge, and TAPOPO, Associate Judge.

Counsel:      For Plaintiff, Marie A. Lafaele
                 For Defendants, Katopau T. Ainu`u

On January 15, 2002, Defendant Winnie Su`apaia ("Winnie") sought to register a separation agreement ("Separation Agreement") regarding a house located on the Pulu family's land. The Separation Agreement was executed between Winnie and Defendant Pulu F. Talalotu ("Pulu"), the *sa`o* of the Pulu family. Plaintiff Michael Pulu ("Michael") timely filed his objection to the registration of the Separation Agreement.

In accordance with A.S.C.A. § 43.0302, this matter was referred to the Secretary of Samoan Affairs. However, after two hearings the parties were unable to resolve their differences. Accordingly, the dispute was referred to this Court under A.S.C.A. § 3.0208(b)(2). Trial was held on July 7-9, 2003. All parties and counsel were present.

## I.     FACTS AND CONTENTIONS

In 1974, Toe To`oto`o ("Toe"), a member of the Pulu family, constructed the disputed house on the Pulu family's communal land named "Fitiuli" in Pago Pago. Toe testified that the family *sa`o* then in office signed an agreement to separate the house from the land. She claimed that she lost her copy of the separation agreement to hurricane Ofa in 1990 and that the registered agreement was no longer available at the Territorial Registrar's Office.

We believe that Toe did obtain a separation agreement. The statutory authorization of separation agreements essentially facilitates loans for home construction on communal land. Toe spent more than $50,000 on building the house and, though not expressly said, probably financed at least a portion of this substantial amount for the project. In any event, she believed that a separation agreement was necessary for the house construction. The separation agreement would also have facilitated Toe's sale of the house to her cousin, Dave Pulu ("Dave"). No family member has ever objected to this sale.

In 1993, Dave purchased the house from Toe for $24,000.[1] Dave and

---

[1] It is disputed by the parties as to whether Toe sold the house to Dave or to "Dave and his sons." Besides the final $1,000 payment, there is no evidence that someone other than Dave made the payments for the house. The facts indicate that Dave and Toe were the contracting parties, and that Dave alone was obligated to pay Toe the purchase price. It is also disputed as to whether Dave and Toe placed a condition on the contract requiring that the house remain with a blood member of the Pulu family. However, even if Winnie is a member of the family (well established) without Pulu blood (in dispute), she has been living in the house for several years without objection from the contracting parties.

Toe verbally agreed that payments would be made in monthly installments of $1,000. However, Toe did not enforce the agreement to make monthly payments but, rather, allowed Dave to skip payments until he was financially able to make them. Dave passed away in November of 2001. At the time of Dave's death, there was an outstanding balance of $1,000 on the house. Michael, Dave's son, paid Toe this balance on December 11, 2001, a very short time later.

Winnie currently resides in this house with her family. Previously, Winnie and her family lived in California. In 1998, Winnie decided to move back to American Samoa at the insistence of Dave, her brother or at least half-brother. According to Winnie, Dave promised her that he would give her a house if she returned to live in American Samoa and assist in his business here. Winnie claims upon her return to American Samoa, Dave gave to her the house which is the subject of this litigation. Winnie lived in the house, apparently without incident, until Dave passed away in November of 2001.

At some point after Dave's death, Winnie sought a Separation Agreement from Pulu with respect to the house. Pulu testified that prior to Dave's death, Dave told him he had given the house to Winnie. Pulu did not consult with Toe or Michael prior to signing the Separation Agreement. Winnie and Pulu executed the Separation Agreement on January 15, 2002, and Winnie offered it for registration with the Territorial Registrar the same day.

Michael objects to the Separation Agreement. He claims the Separation Agreement is invalid because Dave could not give Winnie the house when he still owed Toe $1,000. Michael also claims that Pulu's decision is invalid because Pulu never consulted with him or Toe prior to signing the Separation Agreement. Michael argues that if the Separation Agreement is upheld, he should receive payment from Winnie for expenses he incurred in 1994 when he and his brothers remodeled the house.[2]

II.     DISCUSSION AND CONCLUSIONS

---

Accordingly, even assuming the blood condition existed, it has been waived with respect to Winnie living in the house.

[2] Specifically, Michael claims that in 1994 he, his father and his brothers spent $22,980 in materials and supplies and $14,400 on labor in order to remodel the house. He submitted an inventory of parts and labor as evidence of his alleged costs. Michael also claims he and his brothers contributed to the $24,000 purchase price. There is no documentary evidence to support this claim other than the check and receipt for the $1,000 final payment.

■ As an initial matter, "the court's role in intra family disputes is a review one. The court will not substitute its judgment for that of the senior matai, absent a clear abuse of discretion." *Toleafoa v. Imo*, 7 A.S.R.2d 117, 124 (Land & Titles Div. 1988); *see also Malala v. Temu*, 11 A.S.R.2d 137, 142 (Land & Titles Div. 1989) ("Courts will not interfere with the decisions of a *sa`o* unless they are arbitrary, capricious, illegal, or abusive of discretion."). "[T]he general rule [is] that a *sa`o* has the authority to make decisions about family land." *Malala*, 11 A.S.R.2d at 142. We see no reason to disturb Pulu's decision in this case.

Michael seeks to invalidate the Separation Agreement because Pulu did not consult with him or with Toe prior to executing the agreement and because he believes Pulu mistakenly found that Dave gave the house to Winnie. We see no reason to disturb Pulu's decision to execute the Separation Agreement even though he did not consult with Michael and Toe. "[T]he obligation of a *sa`o* to discuss family decisions with family members cannot be reduced to a formula." *Id.* In this case, the fact that Pulu did not consult with Toe or Michael prior to executing the Separation Agreement is not a reason to render the Separation Agreement invalid.

■ Pulu's understanding that Dave gave the house to Winnie is a reasonable one. The conveyance of the house as a gift needs to meet three criteria: (1) that Dave intended to orally convey the house to Winnie; (2) that Dave delivered the house to Winnie; and (3) that Winnie accepted the house. *See, e.g.*, No. 95-011, 1997 WL 33480216, *3 (N. Mar. I. July 25, 1997); 38 AM. JUR. 2D *Gifts* § 19 (1999). In this case, these three requirements are met.

■ The evidence demonstrates that Dave intended to give the house to Winnie. "The intention of the donor may be expressed in words, actions, or a combination thereof, and may be inferred from the surrounding facts and circumstances, including the relationship of the parties." 38 AM. JUR. 2D *Gifts* § 19 (1999). Dave told Winnie that he would give her a house to live in if she moved from California to American Samoa. She and her husband completely uprooted their lives in California out of respect for her brother Dave's insistence that she return here to assist in his business and in reliance on Dave's promise to provide them with a place to live. Winnie's testimony is credible.

Dave clearly delivered the house to Winnie and she accepted possession. Winnie moved into the house upon her arrival in American Samoa and has been living in the house for several years. *See generally* 38 AM. JUR. 2D *Gifts* §§ 22, 33 (1999). Accordingly, we find that Dave gave the house to Winnie.

■ Michael argues that Dave could not give Winnie the house because he still owed Toe $1,000. We disagree. "A grantor may make a gift of encumbered property." *Kiel v. Brinkman*, 668 S.W.2d 926, 929 (Tex. App. 1984) (finding a conveyance of land to be a gift even though an unpaid mortgage existed on the property); *see also Foley v. Allen*, 170 F.2d 434, 437 (5th Cir. 1948) ("We are aware of no rule or principle that prevents the donor from making a valid gift of personal property that is subject to a lien."). In fact, "[a] donor may make a gift of encumbered property in which the donee agrees to discharge the indebtedness" or the donor may "agree to pay off the indebtedness but he is not bound to pay off the indebtedness unless there is evidence that he intended to pay it." *Estate of Kuenstler v. Trevino*, 836 S.W.2d 715, 717-18 (Tex. App. 1982). Accordingly, Dave gave Winnie the house in spite of the one outstanding payment owed to Toe.

■ There is no evidence on whether Winnie and Dave had any agreement on who was responsible to pay Toe the final payment. Dave continued to make payments on the purchase price after Winnie occupied the house. However, absent sufficient evidence that Dave intended to have his estate or any of his sons to pay any balance owed to Toe after his death, we hold that Winnie received received the house as a gift along with the obligation to pay Toe the final payment. *See, e.g., id.* at 718. As such, Winnie shall reimburse Michael the $1,000 final payment. *See generally* RESTATEMENT OF RESTITUTION §§ 1, 43 cmt. d (1937).

Michael also seeks to recover from Winnie the cost of materials and labor he allegedly incurred when he worked on the house in 1994. This he cannot do. Winnie was not even living in the house at the time Michael claims he incurred these expenses. At that time, Dave, as the sole owner of the house, would have received the benefit of this work. Any recovery Michael could potentially collect for this work could only be obtained from Dave.

III.  Order

1. Winnie owns the house Dave gave to her. The Territorial Registrar shall register the Separation Agreement, dated January 2001, by and between Pulu, as the landowner, and Winnie, as the house owner.

2. Michael is denied recovery from Winnie of the cost of materials he and his brothers installed in the house. However, Winnie is required to reimburse $1,000 to Michael for the final house payment.

3. Defendants' request for attorney's fees is denied. However, they are entitled to recover other costs of suit from Michael, and Winnie may credit her share of the costs against the $1,000 she is obligated to pay

Michael.

It is so ordered.